UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CONSTANCE GRAHAM,

                    **Plaintiff,**

   **v.**

ELMIRA CITY SCHOOL DISTRICT, EMIRA
CITY SCHOOL DISTRICT, BOARD OF
EDUCATION,

                    **Defendants.**

No.: **6:10-cv-06645**
**(MAT / JWF)**

---

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF DISMISSAL

---

Submitted by,

**THE LAW FIRM OF FRANK W. MILLER**

**Frank W. Miller, Esq.**

*Attorneys for the Defendants*
*Elmira City School District, et al.*

<u>Office and Post Office Address</u>
6575 Kirkville Road
East Syracuse, New York 13057
Telephone: (315) 234-9900
Facsimile:  (315) 234-9908
Email: fmiller@fwmillerlawfirm.com

Dated:  February 4, 2011

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.  THE COMPLAINT'S TITLE VII CAUSES OF ACTION FAIL TO
    SATISFY PLEADING STANDARDS. ...................................................................... 2

    A.  The Complaint Offers No Non-Conclusory Allegations of
        Discrimination................................................................................................ 4

    B.  The Complaint Merely Recites the Elements of a Hostile Work
        Environment Claim......................................................................................... 7

    C.  The Complaint's Allegations of Retaliation are Dismissible for Failure
        to Allege an Adverse Personnel Action. ......................................................... 9

II. MS. GRAHAM'S STATE LAW CLAIM IS DISMISSIBLE FOR
    SUBSTANTIVE AND PROCEDURAL REASONS................................................. 14

    A.  The Complaint's Substantive Pleading Deficiencies Bar the NYSHRL
        Claims. ......................................................................................................... 15

    B.  The Complaint's NYSHRL Retaliation Cause of Action is Barred for
        Failure to Comply With Procedural Notice of Claim Requirements.............. 16

        1.  Ms. Graham's Complaint Did Not Allege that She Submitted a
            Notice of Claim................................................................................. 17

        2.  Ms. Graham Provided No Notice of the Retaliation Cause of
            Action................................................................................................ 18

        3.  Ms. Graham Must Allege Her SDHR Complaint Was
            Submitted to the Proper Authority..................................................... 20

    C.  The SDHR Complaint is Time Barred From Substantially Complying
        with the Notice of Claim Requirement. ......................................................... 21

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases Cited

*Adams v. Northstar Location Services, LLC*,
    No. 09-CV-1063, 2010 WL 3911415 (W.D.N.Y. Oct. 5, 2010)........................7

*Ashcroft v. Iqbal*,
    --- U.S. ---, 129 S.Ct. 1937, 173 L.Ed.2d 86 (2009)........................3, 4

*AT&T v. New York City Dep't of Human Resources*,
    736 F. Supp. 496 (S.D.N.Y. 1990)........................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................3, 5

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)........................4, 11

*Boykin v. Keycorp*,
    521 F.3d 202 (2d Cir. 2008)........................5, 6

*Briggs v. New York State Dept. of Transp.*,
    233 F. Supp. 2d 367 (N.D.N.Y. 2002)........................11

*Carmellino v. District 20 of New York City Dept. of Educ.*,
    No. 03-cv-5942, 2006 WL 2583019 (S.D.N.Y. Sept. 6, 2006)........................12

*Carlson v. Geneva City Sch. Dist.*,
    679 F. Supp. 2d 355 (W.D.N.Y. 2010)........................8, 16, 20, 21

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)........................11

*Chanval Pellier v. British Airways, Plc.*,
    No. 02-cv-4195, 2006 WL 132073 (E.D.N.Y. Jan. 17, 2006)........................12, 13, 14

*Field v. Tonawanda City School Dist.*,
    604 F. Supp. 2d 544 (W.D.N.Y 2009)........................17

*Fifield v. Eaton*,
    669 F. Supp. 2d 294 (W.D.N.Y. 2009)........................2

*Fincher v. County of Westchester*,
    979 F. Supp. 989 (S.D.N.Y. 1997)........................18

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir.2000)........................................................................10

*Gallagher v. Delaney*,
    139 F.3d 338 (2d Cir. 1998)......................................................................15

*Gear v. New York City Dept. of Educ.*,
    No. 07-cv-11102, 2010 WL 5297850 (S.D.N.Y. Dec. 21, 2010)....................8

*Harris v. Forklift Systems, Inc.*,
    510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).............................8

*Henderson v. Town of Van Buren*,
    789 N.Y.S.2d 355 (N.Y. App. Div. 2005).............................................22, 23

*Jewell v. City of New York*,
    No.94-cv-5454, 1995 WL 86432 (S.D.N.Y. Mar. 1, 1995)..........................19

*Kessler v. Westchester County Dep't of Social Servs.*,
    461 F.3d 199 (2d Cir. 2006)......................................................................10

*Kleehammer v. Monroe County*,
    --- F. Supp. 2d ---, 2010 WL 4053943 (Sept. 8, 2010)..............................15

*Ludwig v. Rochester Psychiatric Center*,
    550 F. Supp. 2d 394 (W.D.N.Y. 2008).....................................................11

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)......................................................................17

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir.1996).........................................................................17

*Martin v. New York State Dept. of Mental Hygiene*,
    588 F.2d 371 (2d Cir. 1978)....................................................................3, 9

*Matter of Saranac Lake Cent. Sch. Dist. v. New York State Div. of Human Rights*,
    640 N.Y.S.2d 303 (N.Y. App. Div. 1996).................................................18

*Mendell v. Salamanca Hous. Auth.*,
    784 N.Y.S.2d 453, (N.Y. App. Div. 2004).................................................18

*Meritor Savings Bank, FSB v. Vinson*,
    477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).........................8

*Myles v. A&L, Inc.*,
No. 08-cv-205C, 2009 WL 4892098 (W.D.N.Y. Dec. 11, 2009)........................4

*Newman v. Leroy Cent. Sch. Dist.*,
No. 07-cv-6299, 2008 WL 974699 (W.D.N.Y. Apr. 8. 2008)..........................18

*Pacheco v. New York Presbyterian Hosp.*,
593 F. Supp. 2d 599 (S.D.N.Y. January 9, 2009)..............................13

*Parochial Bus Sys., Inc. v. Board of Educ. of the City of New York*,
458 N.E.2d 1241 (N.Y. 1983)..................................................18, 21

*Peek v. Williamsville Bd. of Educ.*,
635 N.Y.S.2d 374 (N.Y. App. Div. 1995)......................................16

*Pellei v. Int'l Planned Parenthood Fed'n / W. Hemisphere Region, Inc.*,
No. 96-cv-7014, 1999 WL 787753 (S.D.N.Y. Sept. 30, 1999)....................11

*Racker v. St. Bonaventure Univ.*,
2005 WL 1522797 (W.D.N.Y. June 28, 2005)...................................9, 13

*Richardson v. New York State Dept. of Corr. Ser.*,
180 F.3d 426 (2d Cir. 1999)..................................................11, 13

*Schiano v. Quality Payroll Systems, Inc.*,
445 F.3d 597 (2d Cir. 2006).................................................15

*Serzysko v. Chase Manhattan Bank*,
461 F.2d 699, 703 (2d Cir. 1972) (per curiam),
*cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972)...................3

*Sheppard v. Beerman*,
18 F.3d 147 (2d Cir. 1994)...................................................2

*Simpson v. Borg-Warner Automotive, Inc.*,
196 F.3d 873 (7th Cir. 1999).................................................13

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)......................5

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir.2003)...................................................14

*United States. v. Erie County, New York*,
724 F. Supp. 2d 357, 368 (W.D.N.Y. 2010)...................................4

## Federal Rules Cited

Fed. R. Civ. P. 8(a)(2)..............................................................................................................3, 7

Fed. R. Civ. P. 12(b)(6)...............................................................................................................3

## State Laws Cited

N.Y. Educ. Law § 3813(1)................................................................................................16, 17, 20

N.Y. Educ. Law § 3813(2-b)...................................................................................................21

N.Y. Exec. Law § 297(9)........................................................................................................23

# PRELIMINARY STATEMENT

This memorandum is filed on behalf of the defendant, the Elmira City School District (the "District") in support of its Rule 12(c) motion for dismissal against the plaintiff, Ms. Constance Graham.

This complaint presents a familiar set of circumstances. Not long after the District hired Ms. Graham as an elementary school principal, she began to underperform in that role. Because leadership issues persisted over time—and *despite* the fact that she had no tenure rights and could have been dismissed immediately—the District offered her two opportunities to transfer to better-fitting positions. She admits declining the first offer and accepting the second.

Unfortunately, Ms. Graham now believes the District itself is to blame for her own failure to prosper in a leadership position. In complaints to the New York State Division of Rights ("SDHR") and federal Equal Employment Opportunity Commission ("EEOC"), and now in the instant federal action, she alleged that her underperformance was actually due to a "deliberate, malicious, and vindictive" pattern of racial discrimination within the District. Her current complaint alleges causes of action for racial discrimination, a hostile work environment, and retaliation under Title VII and the New York State Human Rights Law. However, the complaint provides no real facts to explain how the District allegedly discriminated against her.

This memorandum presents a two-pronged approach to dismissing Ms. Graham's complaint in its entirety.

The fist prong of this memorandum will address the federal Title VII claims. Ms. Graham's complaint is subject to dismissal under Rule 12(c) for the simple reason that it presents nothing but conclusory statements and lacks the factual content necessary to state a plausible claim for discrimination or hostile work environment. Additionally, Ms. Graham's Title VII

retaliation claim is barred by her failure to allege facts sufficient to show she suffered an adverse employment action.

The second prong of this memorandum will address the state law claims under the New York State Human Rights Law, which also allege discrimination, hostile work environment, and retaliation. Those state law claims fail for the same substantive reasons as mentioned above for the federal claims. Alternatively, under Rule 12(b)(1) Ms. Graham's failure to plead adherence to state law notice of claim requirements bars this Court's jurisdiction over her New York State Human Rights Law ("NYSHRL") claims.

## ARGUMENT

### I. THE COMPLAINT'S TITLE VII CAUSES OF ACTION FAIL TO SATISFY PLEADING STANDARDS.

Ms. Graham's complaint invites a very straightforward challenge under the basic pleading standards the United States Supreme Court established in *Ashcroft v. Iqbal*. The complaint accuses the District of unlawful racially-discriminatory conduct, but declines to offer any non-conclusory factual information to imbue those accusations with plausibility. On that simple basis, *Iqbal* compels dismissal. Moreover, some stretches of the complaint are so bereft of fact as to be dismissable even under classic pre-*Iqbal* pleading standards. As it stands, the complaint is insufficient to state any cause of action against the District.

A motion for dismissal under Rule 12(c) is subject to the "'same standard as that applicable to a motion under Rule 12(b)(6).'" *Fifield v. Eaton*, 669 F. Supp. 2d 294, 296 (W.D.N.Y. 2009) (quoting *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)). A court must grant favorable inferences to the plaintiff, but must also ensure that the complaint presents "more than labels and conclusions" in support of its claims. *Id.* (citations omitted).

It goes without saying that every federal complaint must include, at a minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Deficient complaints face dismissal for failure to state a cause of action upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Even a generation ago, the Second Circuit noted that "[i]t is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dept. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (citing *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 703 (2d Cir. 1972) (per curiam), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972)).

In 2009, the Supreme Court's decision in *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 173 L.Ed.2d 86 (2009) provided the latest reinterpretation of the appropriate standards for dismissal under Rule 8. Essentially, *Iqbal* held that

> [t]o survive a motion to dismiss, a complaint must state sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

129 S.Ct. 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal citations omitted). *Iqbal* noted that although Rule 8 does not expressly require that a complaint contain "detailed" factual allegations, "a short and plain statement [under Rule 8] . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

In *Iqbal*, the Supreme Court also reaffirmed the principle that a federal court, deciding a motion to dismiss, must consider only statements of alleged fact and should ignore conclusory

statements of law. "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy Rule 8. *Id.* (citing *Twombly*'s statement that courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

Following *Iqbal*, this Court currently implements "[a] two-pronged approach . . . to examine the sufficiency of a complaint, which includes 'any documents that are either incorporated into the complaint by reference . . .'" *United States. v. Erie County, New York*, 724 F. Supp. 2d 357, 368 (W.D.N.Y. 2010) (quoting *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)). "First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they state 'a plausible claim for relief.'" *Id.* (citing *Iqbal*, 129 S.Ct. at 1950). "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Id.*

This Court follows that two-pronged approach to examine complaints of discrimination under Title VII. *Myles v. A&L, Inc.*, No. 08-cv-205C, 2009 WL 4892098 at *2 (W.D.N.Y. Dec. 11, 2009).

**A.      The Complaint Offers No Non-Conclusory Allegations of Discrimination.**

Turning to the substance of Ms. Graham's complaint, analysis under *Iqbal*'s two-pronged approach reveals that its "General Allegations of Discrimination" section provides absolutely no factual allegations suggesting discrimination. Once all conclusory statements are "stripped away," nothing remains.

Of the eight separate paragraphs under Ms. Graham's "General Allegations of Discrimination," every single one must be stricken under *Iqbal*'s analytical method. (Dkt. # 1, "Complaint," ¶¶ 12-13). Paragraph 12 conclusorily alleges a pattern of race discrimination for approximately three years, but offers no facts or examples of such discrimination. Paragraph 13A must also be stripped away because it is only a "recital" of an element of a cause of action. Paragraphs 13B offers a conclusion, unsupported by examples of any of the "discriminatory acts" the District allegedly knew about. Similarly, paragraph 13C's statement that the District violated its own policies is a purely conclusory as long as it fails to mention the specific policies to which it refers and how the District allegedly violated them. Paragraphs 13D and 13E must also be stripped away for being threadbare recitals of elements of a discrimination cause of action. Paragraph 13D is conlcusory because it fails to offer any instances of the allegedly "different" treatment or even a clue as to what the "different" treatment might have been. As for paragraph 13E, simply alleging a "hostile and unsupportive" work environment without factual support does not plausibly suggest discrimination. Paragraph 13F is conclusory for failing to offer any facts suggesting exactly how the District's "employment, promotional, training, and benefits practices" had any disparate impact on African American employees. Finally, paragraph 13G is a purely superfluous conclusory statement of guilt that offers no relevant information.

The complaint's reliance on purely conclusory statements in its attempt to allege discrimination renders that cause of action dismissible under the Second Circuit's interpretation of *Twombly*. Although the Second Circuit has not held Rule 8(a) imposes a requirement for a plaintiff to plead facts that are specific enough to fulfill every element of a *prima facie* cause of action, a discrimination claim must nevertheless be "sufficient to give [the defendant] fair notice of [the plaintiff's] claim and the ground upon which it rests." *Boykin v. Keycorp*, 521 F.3d 202,

214 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).   In this case, the complaint's conclusory allegations are so broad, vague, and unparticular that it fails to give the District fair notice of what she believes it did to violate her rights.

The complaint's lack of notice becomes apparent when compared with the complaint at issue in the Second Circuit's controlling decision in *Boykin*.

*Boykin* involved a woman who was allegedly denied a home equity loan on the basis of her race.   *Id.* at 204.   Although the Second Circuit acknowledged that her complaint did not present facts sufficient to show all the elements of a *prima facie* case for racial discrimination, it held that the complaint satisfied *Twombly*'s interpretation of Rule 8(a) because it: (1) alleged that the plaintiff was an African-American woman, (2) alleged that the plaintiff satisfied all of the defendant bank's credit requirements and had received conditional approval, (3) alleged that bank subsequently denied the loan, (4) alleged that the true reason for the denial was race and the bank's proffered explanation was pretextual, (5) alleged that similarly situated loan applicants not in protected classes were treated more favorably, and (6) alleged that the bank's proffered reason for denial was pretextual because it did not offer the plaintiff the same loan counseling advice as it offered to other non-minority loan applicants whose loans had been denied.   *Id.* at 214-15.   All that information, the Second Circuit held, amounted to "fair notice" to the defendant bank of how exactly it allegedly violated the plaintiff's rights.   *Id.* at 215.

Here, Ms. Graham's complaint falls below that standard because it lacks specific facts describing the discrimination.   For example, Ms. Graham's complaint did not include any particular time, place, or context in which the District allegedly discriminated against her.   It also failed to cite any particular decision the District made which was inexplicable but for

discrimination. And, it failed to name any specific District administrators who allegedly discriminated against Ms. Graham. Whereas the complaint in *Boykin* alleged *all* those things—in the specific and identifiable context of one single transaction—Ms. Graham's "General Allegations of Discrimination" only amount to an "unadorned, the-defendant-unlawfully-harmed-me accusation." That is insufficient to state a plausible claim for racial discrimination under *Iqbal* or the Second Circuit's interpretation in *Boykin*. *See also Adams v. Northstar Location Services, LLC*, No. 09-CV-1063, 2010 WL 3911415 at *3 (W.D.N.Y. Oct. 5, 2010) (dismissing a Title VII action alleging gender discrimination the "complaint merely allege[d] that '[d]efendant has intentionally discriminated against Plaintiff based upon gender and retaliation under applicable federal and state law'" and thus "failed to allege facts . . . [to] give rise to an inference of gender discrimination").

In this case, although Ms. Graham's complaint doggedly and repeatedly asserts that discrimination occurred and she deserves compensatory and punitive damages, it does so exclusively in conclusory terms that must be stricken under any Rule 8(a) analysis. Beyond, the conclusory statements there is no factual content whatsoever. On that simple basis, the complaint's "General Allegations of Discrimination" fail to provide any factual support for her allegations of discrimination.

**B. The Complaint Merely Recites the Elements of a Hostile Work Environment Claim.**

The allegations in the subsequent section of the complaint, accusing the District of maintaining a hostile work environment, wholly fail to even approach Rule 8(a)'s standards for "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under any interpretation of Rule 8—past or present—that claim would be dismissable.

Racial discrimination does not inexorably lead to a hostile work environment. Rather, a hostile work environment only exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 373 (W.D.N.Y. 2010) (holding, in the context of a 12(b)(6) dismissal motion, that "[t]o establish a claim of hostile work environment discrimination, a plaintiff must show that . . . the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered") (citations omitted).

Just as with the "General Allegations of Discrimination" section of the complaint, the "Hostile Work Environment Claims" fail to provide fair notice of the acts or occurrences that allegedly created to a hostile work environment. (Complaint, ¶¶ 14-17). The complaint lacks any information about any specific instances of alleged discriminatory intimidation, ridicule, or insult toward Ms. Graham or any other African-American employee, lacks a time, place, or context in which any allegedly harassing act occurred, and lacks the names of any specific District personnel who allegedly ridiculed or insulted Ms. Graham. Most importantly, it fails to even *attempt* to characterize the nature of the conduct that Ms. Graham believed was harassing or the frequency with which it occurred. On that basis, it is subject to dismissal. *Gear v. New York City Dept. of Educ.*, No. 07-cv-11102, 2010 WL 5297850 at *5 (S.D.N.Y. Dec. 21, 2010) (finding no plausible claim for relief where a plaintiff made "a single, conclusory allegation that [the defendant] would have acted differently if she were white. That allegation is

unaccompanied by any facts regarding [the defendant's] statements, actions, or policies that would support a plausible inference of discriminatory animus or disparate impact.").

The hostile work environment allegations are "nothing more than naked assertions . . . setting forth no facts upon which a court could find a violation of the Civil Rights Acts." *Martin*, 588 F.2d at 372. Even under the lenient pre-*Twombly* or pre-*Iqbal* pleading standards, Ms. Graham's cause of action for hostile work environment in violation of Title VII is subject to dismissal for merely reciting the elements of the cause of action.

### C. The Complaint's Allegations of Retaliation are Dismissible for Failure to Allege an Adverse Personnel Action.

Finally, the complaint's "Retaliation Claims," (¶¶ 18-20) are also subject to dismissal, but not for lack of factual content. Rather, Ms. Graham described one specific occurrence: her transfer from the position of elementary school principal to an allegedly inferior position as the District's Deputy Director of Human Resources. She alleges the transfer was retaliatory. However, the retaliation claim is nevertheless dismissible because Ms. Graham's prior complaints to the EEOC and SDHR indicate she had the opportunity to refuse the transfer but nevertheless accepted it *voluntarily*. That fact forecloses the transfer from constituting an adverse employment action.

To determine whether a complaint's Title VII retaliation cause of action is capable of surviving a motion to dismiss, this Court utilizes the *prima facie* elements as "a measure of legal feasibility." *Racker v. St. Bonaventure Univ.*, 2005 WL 1522797 at *4 (W.D.N.Y. June 28, 2005). A complaint must present allegations sufficient to convince a court that the plaintiff will likely be able to muster evidence sufficient to satisfy each *prima facie* element. *Adams*, 2010 WL 3911415 at *3-4. One of the required elements of an employment retaliation is a plausible

showing that an employer subjected the plaintiff to an adverse employment action. *Racker*, 2005 WL 1522797 at *5.

It is well established that an adverse employment action involves a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000). The materiality of an adverse employment action "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 209 (2d Cir. 2006). Common examples of materially adverse changes include termination, demotion, or the material loss of wages, benefits, or job responsibilities. *See Galabya*, 202 F.3d at 640. But, impliedly, all those factors presume they are deliberately and unilaterally imposed upon the employee in an adverse fashion.

In her complaint, Ms. Graham attempts to portray herself as the victim of an adverse employment action in three ways.

First, she alleges that the District "failed to act in an assisting manner pursuant to the duties of supervisor and administrator." (Complaint, ¶ 19A). That allegation—vague without any elaborating facts or examples—does not appear allege any material loss of employment status, pay, or benefits. Outside the disability context, the failure to give an employee special "assistance" to fulfill her job responsibilities is not actionable. On its face, that allegation fails to describe an action sufficiently adverse to sustain a retaliation claim.

Second, Ms. Graham alleges that the District placed "untrue and unfair" work performance reviews in her personnel file. That allegation, without more, also does not constitute an adverse personnel action. (Complaint, ¶ 19B). One reason is that Ms. Graham did

not expressly allege that the "untrue and unfair" performance reviews were negative, or even critical at all. *See Richardson v. New York State Dept. of Corr. Ser.*, 180 F.3d 426, 443-44 (2d Cir. 1999) (holding that a plaintiff's allegations of receiving "average" ratings on performance reviews when she felt entitled to "excellent" ratings did not support a retaliation claim under Title VII). Yet even if Ms. Graham had alleged the performance evaluations were negative, the complaint does not provide any specific allegations of adverse consequences. For example, she does not report being demoted or barred from promotion on account of the allegedly "untrue and unfair" statements. Absent allegations of adverse consequences, negative performance evaluations are not adverse employment actions. *Ludwig v. Rochester Psychiatric Center*, 550 F. Supp. 2d 394, 398 (W.D.N.Y. 2008) (citing *Pellei v. Int'l Planned Parenthood Fed'n / W. Hemisphere Region, Inc.*, No. 96-cv-7014, 1999 WL 787753 at *12 (S.D.N.Y. Sept. 30, 1999). Allegations that Ms. Graham simply disagreed with her performance evaluations, without more, do not contribute to a retaliation claim.

Third, Ms. Graham alleges that the District transferred her into a new position without a work contract and outside a collective bargaining unit. (Complaint, ¶ 19C). Although her "judicial" complaint to this Court says no more, her prior administrative complaint to the EEOC and SDHR contains additional facts to elaborate the allegations in the complaint.[1] (Declaration of Frank W. Miller ("Miller Dec."), Exhibit A). Because the EEOC complaint is expressly incorporated into the complaint by reference, it is reviewable on a Rule 12 motion for dismissal. *See* Complaint, ¶¶ 10-11; *Blue Tree Hotels*, 369 F.3d at 217; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Briggs v. New York State Dept. of Transp.*, 233 F. Supp. 2d 367, 372 fn. 1 (N.D.N.Y. 2002) (surveying numerous instances of the Second Circuit

---

[1] Note that Ms. Graham's complaint to the SDHR and EEOC are one in the same document. She originally submitted her administrative complaint to the SDHR, who then forwarded it to the EEOC. *See* Miller Dec., Exhibit A.

and local district courts considering EEOC complaints for deciding motions to dismiss on the pleadings).

In her EEOC complaint, Ms. Graham revealed that her allegedly retaliatory transfer was not compulsory. She described it as an "offer," subject to refusal. Specifically, she alleged

> [i]n June 2008 [the District] informed me that I would be shifted to the position of Assistant Principal . . . As this amounted to a demotion, I refused the offer. I made it clear to the Director of Human Resources, Deputy Superintendent, Superintendent and the School Board that I had not resigned from my position as building principal.

(Appendix A, ¶ 3c). In the very next paragraph of the EEOC complaint, she alleged

> [The District] then offered me the position of Deputy Director of Human Resources, which I accepted with reservation. I believe the School Board enacted this shift change in an attempt to discriminate against me, given that they significantly reduced my salary and offered me no contract or union representation.

(Appendix A, ¶ 3d). Those allegations present the inexorable conclusion that Ms. Graham's transfer to the position of Deputy Director of Human Resources was non-compulsory and voluntarily accepted. When the District approached her about the first transfer, Ms. Graham expressly declined it and the District did *not* ultimately force her to move. When offered the second transfer, she admits accepting it—without the same vocal opposition.

An admittedly voluntary transfer is generally not an adverse employment action. *Carmellino v. District 20 of New York City Dept. of Educ.*, No. 03-cv-5942, 2006 WL 2583019 at *39 (S.D.N.Y. Sept. 6, 2006) (finding no adverse employment action when a teacher "elected to transfer rather than remain in a work environment where her superior had concluded that she had used poor judgment and placed students at risk"); *see Chanval Pellier v. British Airways, Plc.*, No. 02-cv-4195, 2006 WL 132073 at *4 (E.D.N.Y. Jan. 17, 2006) ("It is clear that [the plaintiff's] transfer cannot serve as an adverse employment action because she voluntarily

requested and accepted it."); *see also Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 617 (S.D.N.Y. January 9, 2009) (distinguishing a "voluntary transfer" from one hospital unit to another as insufficient to state an adverse employment action).

This Court's previous decision in *Racker v. St. Bonaventure University* illustrates the significance of a voluntary, unforced change in employment circumstances. In *Racker*, the plaintiff alleged in her complaint that the defendant, a private university, terminated her because she declined to renew her one-year employment contract on a provisional basis (in lieu of another full-term contract). 2005 WL 1522797 at *2. In support of a retaliation claim, she alleged the university's decision to terminate amounted to an adverse employment action. *Id.* at *7. This Court noted the voluntary nature of the plaintiff's action, and indicated it "ha[d] no difficulty concluding that plaintiff's termination was the result of her own decision not to accept the University's offer, rather than the result of any adverse, retaliatory action on the part of the employer." *Id.*

The Second Circuit has only found a voluntary transfer to potentially amount to an adverse employment action if the plaintiff alleges a "constructive" transfer akin to a constructive discharge. *Richardson*, 180 F.3d at 444. Under that standard, a voluntary transfer cannot constitute an adverse employment action unless it is objectively apparent that the employer deliberately made the employee's working conditions in her former position so intolerable, as a result of discriminatory animus, that she had no choice but to abandon the former position and seek a new position with the same employer. *Chanval Pellier*, 2006 WL 132073 at *4 (interpreting *Richardson* and surveying case law from other federal jurisdictions); *see also Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876-77 (7th Cir. 1999) (declining to find an adverse employment action in a Title VII action where the plaintiff voluntarily accepted a

new position and did not allege being forced into the new position by intolerable working conditions).

Ms. Graham's complaint fails to plead facts indicating a "constructive" transfer. Even with all inferences favoring the plaintiff, nothing in the complaint reasonably suggests that the District "intentionally created conditions 'so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled' to accept the transfer." *Chanval Pellier*, 2006 WL 132073 at *5 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir.2003)). The pleadings actually imply the opposite. The allegations in Ms. Graham's EEOC complaint suggest that if she had declined to accept the District's offer of transfer to the Deputy Director of Human Resources position, just as she had previously declined the transfer to the Assistant Principal position, the District would not have defied her wishes and would not have forcefully moved her.

In the end, Ms. Graham's complaint pleads only that the District offered her a change of position and she accepted. The fact that she did so "with reservation" is of no consequence if the ultimate decision was indeed her own and was not coerced by an intolerable working environment. Neither the transfer nor the preceding two allegations of the District's "fail[ure] to act in an assisting manner" or unspecified "untrue and unfair" performance evaluations amount to an adverse personnel action. As a result, Ms. Graham's Title VII retaliation cause of action is subject to dismissal as a matter of law.

## II.  MS. GRAHAM'S STATE LAW CLAIM IS DISMISSIBLE FOR SUBSTANTIVE AND PROCEDURAL REASONS.

The NYSHRL claims at the end of Ms. Graham's complaint are dismissable for all the same substantive reasons as her Title VII claims. But, for the state law claims, additional procedural grounds for dismissal exist. Ms. Graham's complaint does not allege that she filed a

notice of claim with the District. Generally, that is a fatal error depriving this Court of jurisdiction and necessitating dismissal.

Although Ms. Graham might be tempted to argue that her SDHR complaint should count as a notice of claim, that argument would be unsuccessful for several reasons. First, the SDHR complaint did not mention Ms. Graham's retaliation theory of liability. Second, Ms. Graham did not allege that she submitted the SDHR complaint to the proper authority within the District. Third, Ms. Graham's SDHR complaint was submitted more than one year before she ultimately filed suit in this Court, surpassing the one-year statute of limitations a plaintiff has to file a validly-noticed judicial complaint against a school district.

## A. The Complaint's Substantive Pleading Deficiencies Bar the NYSHRL Claims.

The Second Circuit holds that "[h]ostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). If a deficiency exists in a plaintiff's federal cause of action, the same deficiency precludes the analogous state law cause of action. *Id.*; *Kleehammer v. Monroe County*, --- F. Supp. 2d ---, 2010 WL 4053943 at *5 (Sept. 8, 2010) (holding in the context of a Rule 12 motion to dismiss that the elements of pleading for NYSHRL claims "'can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII'") (quoting *Gallagher v. Delaney*, 139 F.3d 338, 345 (2d Cir. 1998)).

On that basis, the complaint's state law causes of action are barred by the same pleading deficiencies that bar the Title VII claims. The employment discrimination prong is barred for failure to plead facts sufficient to plausibly show the existence of racially discriminatory treatment or animus. The hostile work environment prong is barred for being wholly conclusory

and lacking fair notice. And, the retaliation prong is barred for failure to plead facts sufficient to show an adverse employment action occurred.

**B.    The Complaint's NYSHRL Retaliation Cause of Action is Barred for Failure to Comply With Procedural Notice of Claim Requirements.**

In state law causes of action against school districts, a plaintiff must make several allegations affirming compliance with the Education Law's statutory notice of claim requirements. Ms. Graham alleged none of them, mandating dismissal of the NYSHRL claims. Additionally, the deficiencies are too great to allow her SDHR complaint to stand in for her notice of claim. Additionally, under the applicable statute of limitations in the Education Law, Ms. Graham's instant judicial complaint cannot ever be deemed supported by a proper notice of claim.

It is well-established that a notice of claim is required if an SDHR complainant seeks to abandon her administrative complaint and pursue a judicial remedy in court. As a condition precedent to a suit under the NYSHRL seeking money damages, the employer must receive notice of the plaintiff's allegations and demands. N.Y. EDUC. LAW § 3813(1); *Carlson*, 679 F. Supp. 2d at 366 (acknowledging that "[i]t is well settled that Education Law § 3813(1) is a statutory condition precedent to a petitioner's bringing of a proceeding against a school district"). Federal district courts within New York construe the state notice of claim requirements strictly. *AT&T v. New York City Dep't of Human Resources*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (citations omitted).

This Court holds that a plaintiff's failure to comply with state law notice of claim requirements creates jurisdictional issues implicating Rule 12(b)(1). *Carlson*, 679 F. Supp. 2d at 363-64 (citing *Peek v. Williamsville Bd. of Educ.*, 635 N.Y.S.2d 374, 376 (N.Y. App. Div. 1995).

It also holds that a plaintiff's failure to comply with a state law notice of claim requirement "is a fatal defect mandating dismissal of the action." *Id.* at 366 (citations omitted).

Finally, it is critical to note that Ms. Graham, as the plaintiff, ultimately bears the burden for both *pleading and proving* that each and every notice of claim requirement was fulfilled. *Field v. Tonawanda City School Dist.*, 604 F. Supp. 2d 544, 573 (W.D.N.Y 2009) ("Under § 3813, Plaintiffs, as a prerequisite to suit against the District, must plead and prove compliance with the requirements of § 3813.") (citations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (holding that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists") (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)).

**1.      Ms. Graham's Complaint Did Not Allege that She Submitted a Notice of Claim.**

The sole pleading requirement the Education Law mandates for state law causes of action against school districts is an allegation in the complaint that the plaintiff complied with her notice of claim requirements.  The state Education Law, in relevant part, states that

> [n]o action or special proceeding, for any cause whatever . . . shall be prosecuted or maintained against any school district [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1).

Ms. Graham's complaint clearly lacks any of the necessary allegations; it does not allege she submitted a verified notice of claim, does not allege she delivered it to the District's Board of Education, and does allege the Board of Education had at least thirty days to consider it before

she filed suit. On that basis alone, this Court presumptively lacks jurisdiction over Ms. Graham's state law cause of action.

## 2. Ms. Graham Provided No Notice of the Retaliation Cause of Action.

Even if a plaintiff submits a proper—or at least a substantially compliant—notice of claim prior to suing a school district, the notice of claim must provide notice of *each* separate theory of liability the plaintiff subsequently pleads in her judicial complaint. Here, even if this Court finds that Ms. Graham's SDHR complaint provided adequate notice of her discrimination theory, the SDHR never mentioned retaliation. Thus, the retaliation prong of Ms. Graham's NYSHRL claim is not validly noticed and must be dismissed.

Occasionally, a complaint to the SDHR will express the same factual content required of a notice of claim, thus substantially complying with that facet of the notice of claim requirement. *Mendell v. Salamanca Hous. Auth.*, 784 N.Y.S.2d 453, 454 (N.Y. App. Div. 2004) (holding that a plaintiff's timely charge letter to the SDHR "sufficiently informed the defendant of the claim" by providing the relevant details). For example, the SDHR complaint might contain the "essential elements" of a notice of claim, which consist of "the nature of the claim, the time when, the place where, and the manner in which the claim arose." *Newman v. Leroy Cent. Sch. Dist.*, No. 07-cv-6299, 2008 WL 974699 at *4 (W.D.N.Y. Apr. 8. 2008) (citing *Parochial Bus Sys., Inc. v. Board of Educ. of the City of New York*, 458 N.E.2d 1241, 1245 (N.Y. 1983) and *Matter of Saranac Lake Cent. Sch. Dist. v. New York State Div. of Human Rights*, 640 N.Y.S.2d 303, 304 (N.Y. App. Div. 1996). But, for substantial compliance to occur, the plaintiff's prior SDHR complaint must put the school district on notice to each theory of liability subsequently expressed in the judicial complaint. *Fincher v. County of Westchester*, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997) (holding that "[a]ny cause of action or theory of liability not directly or

indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit"); *see also Jewell v. City of New York*, No.94-cv-5454, 1995 WL 86432 at *1 (S.D.N.Y. Mar. 1, 1995) (granting summary judgment dismissing claim for negligent hiring where notice of claim merely alleged negligence and contained no facts suggesting that "negligence" referred to city's hiring practices rather than to the tortious acts of its employees).

Although Ms. Graham's SDHR complaint claimed racial discrimination and a hostile work environment, it completely fails to mention any theory of liability based on retaliation. In fact, it severely confused the two issues by originally presenting the District's offers of transfer as proof of the underlying discrimination claim, *not* as elements of retaliation. As recited above, Ms. Graham's SDHR complaint described in detail how the District offered her the position of Deputy Director of Human Resources. But, it clearly stated that Ms. Graham believed the District offered her the transfer "in an attempt to discriminate against me." (Appendix A, ¶ 3d). Later in the same complaint, she reiterated "I further believe I was removed from the position of School Principal so that a Caucasian administrator could replace me."

Now, however, in Ms. Graham's judicial complaint to this Court, the exact same incident is presented as *retaliatory* in nature, not discriminatory in nature. She currently alleges that "[a]s a direct and proximate result of the plaintiff having complained about the disparate treatment of herself as an African American . . . Defendant retaliated against the Plaintiff . . . by [C.] . . . transferring Plaintiff into a position outside the protections of a work contract and bargaining unit . . ." (Complaint, ¶ 19). Additionally, Ms. Graham's original SDHR complaint did not mention any complaints she made to the District prior to the transfer offers which would have give the District reason to retaliate against her. Thus, the SDHR complaint would not have put a reasonable investigator on notice that Ms. Graham might have been the victim of retaliation.

In sum, the NYSHRL claim for retaliation is not properly before this Court. Even if this Court *both* accepts the transfer as an adverse employment action, *and* accepts the SDHR complaint as a notice of claim, the NYSHRL side of Ms. Graham's retaliation cause of action is barred by her failure to submit timely notice to the District that retaliation occurred.

**3. Ms. Graham Must Allege Her SDHR Complaint Was Submitted to the Proper Authority.**

Even if this Court finds that the factual content of Ms. Graham's SDHR complaint was sufficient to put the District on notice of both discrimination and retaliation, Ms. Graham must *also* allege that the SDHR complaint was served upon the proper authority within the District. In its most recent case on point, this Court interpreted that requirement extremely strictly. Here, that deficiency bars *all* of Ms. Graham's state law claims, not only the claims for retaliation.

As stated above, the Education Law requires a party to submit a notice of claim to a school district's "officer or body having the power to adjust or pay said claim." N.Y. EDUC. LAW § 3813(1). In a decision last year, this Court held that

> [a]lthough substantial compliance with the statute regarding the degree of descriptive detail in the notice of claim is sufficient, the statutory requirements mandating notification to the proper public official must be fulfilled. . . . Even if a notice contains sufficient information, it must still be presented to the governing body of said district, and the failure to do so is a fatal defect mandating dismissal of the action. The statutory prerequisite is not satisfied by presentment to *any other individual or body*, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice.

*Carlson*, 679 F. Supp. 2d at 366 (numerous internal citations and quotations omitted) (emphasis in original).[2]

---

[2] The New York Court of Appeals, the prime interpreter of Education Law § 3813, also strictly holds that a notice of claim *must* be submitted to the proper authority in a school district. In its words,

> [a]lthough we have previously held that, where the school district has been "sufficiently informed" of the claim "all that is required is substantial compliance with the statute" regarding the degree of

*Carlson*'s rule is clear. Ms. Graham must allege in her complaint that she submitted the SDHR complaint directly to the District's Board of Education. Ms. Graham's complaint is devoid of any such allegation, rendering her SDHR complaint insufficient *in toto* to fulfill her notice of claim requirement. *Id.* at 368.

### C.     The SDHR Complaint is Time Barred From Substantially Complying with the Notice of Claim Requirement.

Even if this court ultimately accepts the content of Ms. Graham's SDHR complaint as fulfilling the notice of claim requirement, and even if Ms. Graham ultimately shows proper service upon the Board of Education, the SDHR complaint would nevertheless be time barred from fulfilling the notice of claim requirement. Ms. Graham did not file her complaint within the one-year window the notice of claim opens.

Pursuant to the Education Law, a plaintiff must commence any claim against a school district within one year of the date claim accrues, regardless of whether the law would otherwise provide a longer statute of limitations against a non-school defendant. N.Y. EDUC. LAW § 3813(2-b) (stating that "notwithstanding any other provision of law providing a longer period of time in which to commence an action or special proceeding, no action or special proceeding shall be commenced against [a school district] more than one year after the cause of action arose"); *see also Newman*, 2008 WL 974699 at *3.

---

descriptive detail in a notice of claim, we have, nevertheless, always insisted that statutory requirements mandating notification to the proper public body or official must be fulfilled. Indeed, this court has long held, in the words of Chief Judge Cardozo, that where the "legislature has said that a particular form of notice, conveyed with particular details to particular public officers, shall be a prerequisite to the right to sue [,] [t]he courts are without power to substitute something else."

*Parochial Bus Sys.*, 458 N.E.2d at 1245 (citations and quotations omitted). The Court of Appeals further holds that proper-party submission requirement imposes "a positive statutory mandate" upon the claimant, and may not be overlooked simply "because no prejudice has resulted, 'even to avoid a harsh result.'" *Id.* It definitively ruled that "[a claimant's] failure to present its notice of claim "to the governing body of [the] district or school", here the defendant Board . . . is a fatal defect mandating dismissal of this action." *Id.*

Ms. Graham's SDHR complaint cannot serve as a notice of claim preceding her judicial complaint, because more than one year elapsed between the filed the latter and former documents. It is clear that Ms. Graham filed her SDHR complaint on February 10, 2009. (Miller Dec., Exhibit A, pg. 1). That also means that all the factual allegations in the SDHR complaint describe events that occurred on or before February 10, 2009. By logical extension, that means any claims of discrimination based on those factual allegations must have *accrued* on or before February 10, 2009.

Thus, overlooking all the other deficiencies, even if the February 10, 2009 SDHR complaint constitutes a notice of claim, it would only give Ms. Graham a one-year window to follow up with a judicial complaint initiating a civil action. By February 10, 2010, one year would have necessarily passed after the time all the causes of action described in the notice of claim would have accrued. On February 10, 2010, the statute of limitations for suing on the basis of any allegation described in the SDHR complaint would have expired.

In other words, unless a validly-submitted notice of claim to a school district is sued upon within one year of submission, it becomes void and can no longer support a judicial cause of action. On that basis, Ms. Graham's SDHR complaint does not—and cannot—render her instant judicial complaint validly noticed as Education Law § 3813(1) requires. Too much time elapsed between her SDHR complaint and the instant judicial complaint.

Additionally, state law is well-settled that an SDHR complaint *does not* toll the statute of limitations to bring a subsequent judicial complaint based on the same allegations. This point is illustrated in the state Appellate Division, Fourth Department's decision in *Henderson v. Town of Van Buren*, 789 N.Y.S.2d 355 (N.Y. App. Div. 2005). In *Henderson*, the plaintiff initially brought an SDHR complaint against her employer alleging sex discrimination. *Id.* at 355. Well

after the one year and 90 day statute of limitations to sue a municipality expired, the plaintiff requested under the SDHR to dismiss her complaint so she could elect a judicial remedy instead. *Id.* at 356 (citing N.Y. EXEC. LAW. § 297(9)). Once in court, the Supreme Court quickly dismissed her claims as time barred. *Id.* at 355. The Appellate Division, Fourth Department affirmed. Although the plaintiff argued in favor of a toll, the court held that when an SDHR voluntarily dismisses a complaint, "the statute of limitations was not tolled during the pendency of the complaints filed with the SDHR . . ." *Id.* at 356.

Ms. Graham made the exact same strategy decision as the plaintiff in *Henderson*. Deep into the SDHR's investigation of her complaint, she petitioned the SDHR hearing officer to recommend dismissing the agency's prosecution, admittedly so she could file a judicial complaint on the same subject matter. (Miller Dec., Exhibit B, Recommended Order of ALJ Luban, dated Jul. 15, 2010, p. 2). The basis for the agency's dismissal, Executive Law § 297(9), is identical to *Henderson*. It was a costly strategic error. *Henderson* now forecloses her from arguing that the Education Law's one-year statute of limitations was tolled, and further confirms that her judicial cause of action is time barred.

Finally, the fact that the events and occurrences Ms. Graham described in her SDHR complaint are not time barred from *ever* forming the basis of a judicial cause of action also reinforces the District's argument that Ms. Graham's NYSHRL retaliation claim merits dismissal. As discussed above, the transfer to the position of Deputy Director of Human Resources is the only substantial allegation supporting Ms. Graham's NYSHRL retaliation cause of action. But because her SDHR complaint demonstrates that the District's offer to transfer her occurred prior to February 10, 2009, that transfer would only support a cause of action (whether discrimination *or* retaliation) if Ms. Graham had filed her judicial complaint before February 10,

2010. Under the Education Law's one-year statute of limitations, Ms. Graham may not cite a discrete act occurring before February 2009 to support a state law judicial cause of action against a school district filed in November 2010.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the complaint in its entirety pursuant to Rule 12(c) and Rule 12(b)(1).

Dated: February 4, 2011
      East Syracuse, New York                 Respectfully submitted,

                                      **The Law Firm of Frank W. Miller**

                             By:     **<u>/s/ Frank W. Miller, Esq.</u>**

                                      *Attorneys for the Defendants*
                                      *Elmira City School District, et al.*

                                      <u>Office and Post Office Address</u>
                                      6575 Kirkville Road
                                      East Syracuse, New York 13057
                                      Telephone: (315) 234-9900
                                      Facsimile:  (315) 234-9908
                                      Email: fmiller@fwmillerlawfirm.com